# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL W. ANGEVINE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | 1:09-cv-01496 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **BACKGROUND**

Plaintiff Paul W. Angevine ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 & 9.

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for disability insurance and supplemental security income benefits on or about February 27, 2006, alleging disability as of April 22, 2005. AR 113-122. His application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 86-99. ALJ Bert C. Hoffman, Jr. held a hearing on September 4, 2008, and issued an order regarding benefits on February 27, 2009, finding Plaintiff was not disabled. AR 13-20, 33-70. On January 9, 2009, the Appeals Council denied review. AR 3-6.

**Hearing Testimony**

ALJ Hoffman held a hearing on September 4, 2008, in Fresno, California. Plaintiff appeared and testified, and was represented by attorney Robert Ishikawa. AR 33-70.

Plaintiff was fifty-two years old at the time of the hearing; his date of birth is June 10, 1956. AR 37. He dropped out of high school as a junior and joined the Army at seventeen years of age. He earned his GED in 1977. About two years ago he began taking college courses and has completed about fifteen units thus far. AR 38. Currently he is taking courses in drug and alcohol counseling, law, psychology and history at Fresno City College. AR 38. In the Fall of 2007, Plaintiff passed two of his four classes, earning a C and B respectively. He took two classes in the spring or summer of that year, failing math and passing English. AR 39-40. In the Spring of 2008, Plaintiff took twelve units, however, he earned failing or incomplete grades that semester "because [he] was drinking." AR 39.

In 2005, Plaintiff was working for Petro Stopping Centers in Los Banos. AR 40. He began his career with Petro in 1998 in a restaurant preparation position and worked his way up to general manager before being fired for "drinking and depression" in April 2005. AR 41. Prior to working for Petro, Plaintiff was employed by Wal-Mart working in its distribution center in Red Bluff, California. AR 41. In 1990 through 1993, Plaintiff worked in a few grocery stores, either in the bakery, deli or produce section. AR 41-42.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff took his last drink on July 30, 2008. AR 43. When asked when he last "lit up a joint," he indicated it had been "years ago" and that he does not "do any other drugs but drink." AR 43. Prior to abstaining from alcohol, Plaintiff was drinking a "fifth and a pint a day" of vodka. He stayed in his room and would drink all day, staying away from other people. AR 44. Prior to quitting drinking, Plaintiff attended a Bulldog football game with his grandson. When he was told he could not take vodka into the stadium, he "gulp[ed] it down" and was later taken by ambulance to the hospital after taking a fall. AR 52. Asked whether or not there has been a period of time within the last ten years when he has not been using drugs or abusing alcohol, Plaintiff responded "no" and indicated that drugs and/or alcohol have been a problem since he "started in the Army." AR 54-55.

In August 2008, Plaintiff attended a Veterans Administration (VA) disability hearing in Oakland, California. AR 44. It concerned his ongoing disabilities regarding his hand, right ankle, left kneecap, back, neck, and jaw, as well as post-traumatic stress disorder (PTSD), depression and alcohol use. AR 45. Prior to the hearing, Plaintiff's VA disability rating was thirty percent for his right hand and left knee, jaw and mouth issues, and an ulcer. AR 45.

When asked why he cannot work now, Plaintiff indicated his inability to work is due to depression and alcoholism, and a broken toe and bunions which make walking difficult, as well as his right hand which makes writing difficult. AR 46.

With specific regard to treatment for depression, Plaintiff indicated he sees counselors and a psychologist, whom he can see on an "on-call basis." AR 46. Asked on average how often he obtains psychiatric treatment, Plaintiff indicated about twice a month. AR 46-47. He also attends Dual Recovery Anonymous meetings once a week or once every other week. AR 48.

The symptoms of Plaintiff's depression include wanting "to be shut out from everything," not wanting to be around others and isolating himself. AR 48. He acknowledges attending college classes on Mondays, Wednesday and Fridays from 8 a.m. to 12:50 p.m., but reported he thereafter returns to his room and stays there. AR 49.

Plaintiff got married in June of 2007. His wife works as an in-home care provider to her mother, and has done so for the previous eight years. His wife's mother suffers from dementia

and must be watched twenty-four hours a day, seven days a week.  He will stay with his mother-in-law while his wife does the shopping, for example.  AR 49.  His wife has grown children; he has two grown children with whom he has telephone contact, as well as a teenage daughter whom he does not see.  AR 50, 57.

While he does have a driver's license, he is often driven to and from locations by his wife or others.  AR 49-50.  In June, he traveled to Junction City, Oregon, by car to visit his ailing mother.  AR 50.  He and his wife stayed with his mother for about three weeks; his father has passed away.  AR 51.

Plaintiff enjoys watching television, particularly crime shows, movies, and game shows.  He is "not very active outside."  AR 58.  Reading causes him to fall asleep.  AR 57-58.

When he goes to school or is on his feet "for a while," Plaintiff will use a cane.  He did not use a cane to attend today's hearing because he "thought [he] was going to be sitting most of the time."  AR 58.  The problems with his feet involve bunions and a broken toe.  Additionally, his left knee snags and catches.  AR 58.  Asked more specifically about how far he can walk, Plaintiff indicated he can walk across campus - approximately three to four blocks - with his cane and then rest for the length of the fifty-minute class.  AR 59.  He can stand for twenty to thirty minutes at a time before needing a break.  AR 59.  Plaintiff reported his toe was broken when he jumped off a tank in the military; "[i]t's an old break and it's not healed right."  AR 59.  His left knee gets "arthritis or cramps in it or something."  AR 60.

Muscle relaxers treat his back and neck problems.  He gets muscle spasms in his back at night.  He injured his back and neck when he fell from a tank after it struck a tree limb.  He also "knocked out" his teeth in that incident.  His back and neck are "constantly sore, and [he] can't get comfortable."  AR 60.  His back and neck also bother him when sitting because he'll get "little twinges" and muscle spasms.  AR 60.

Asked how long he believed he was capable of sitting during an eight-hour day, Plaintiff indicated perhaps three hours if permitted to stand up and move around during that period to avoid spasms.  AR 60-61.  While attending classes, Plaintiff sits for fifty minutes at a time, in

four classes over about a three and one-half hour period.  He keeps his legs stretched out to avoid having his left knee lock up.  AR 61.

With regard to his right hand, Plaintiff reported difficulty taking notes.  For example, he can take a half page of notes before he needs to move his hand to avoid cramping, or his hand will "start[] making funny shapes."  AR 61.  Other students help him keep up with note taking if he misses something while exercising a cramp.  AR 61-62.

Diabetes has been a problem as well, and Plaintiff reported it is "somewhat" controlled.  He has recently lost some weight and that has helped.  He admitted the past drinking would cause his blood sugar to rise.  AR 62.  Plaintiff is five feet, seven inches tall.  He currently weighs about 180 pounds, and he was heaviest at about 230 pounds.  He believes the prescription drug "Byetta" has helped because it curbs hunger.  AR 62-63.

Plaintiff experiences numbness in his hands and feet everyday.  He takes pain medication every morning and evening, and a muscle relaxer before he goes to sleep.  When asked how the numbness in his hands or feet affects his ability to walk or use his hand, Plaintiff replied:

> At night I'll be laying there, and all of a sudden I'll get a cramp in my foot on the, on the arch of my foot, and I'll have to get up and stand, move it around and stuff. I mean, it's just an everyday thing. I'm just kind of getting used to it, you know.

AR 64.

Plaintiff reported his hypertension is not under control.  AR 64.  Plaintiff also has difficulty concentrating in class.  During the lecture, he will begin to "start thinking of situations that are all around . . . my wife, the home front . . . bills . . ., [his] mind wanders."  AR 64-65.  He also has difficulty concentrating at home while watching TV.  AR 65.

Plaintiff has reported to his physicians at the VA about flashbacks concerning an Army buddy's death after his friend crashed his vehicle over a cliff, his daughter's kidnap and rape at six years old, and the people he "put in prison through . . . the Army court."  AR 65.  Last night he dreamt he was reaching for a weapon during a fight, and he fell out of bed.  On another occasion he was dreaming about protecting someone, when in reality he hit his wife during the dream.  AR 65-66.

**Medical Record**

The medical record was reviewed by the Court, however, those medical records relevant to the issues on appeal will be addressed below as needed in this opinion.

**ALJ's Findings**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 22, 2005, and had the severe impairments of diabetes and crepitus of the right patella compatible with chondromalacia. AR 15. Nonetheless, the ALJ determined that none of the severe impairments met or exceeded one of the listing impairments. AR 16.

Based on his review of the medical evidence, the ALJ determined that, Plaintiff had the RFC to lift and/or carry twenty pounds occasionally and ten pounds frequently, and to sit, stand and/or walk for six hours in an eight-hour work day. AR 16-19. The ALJ found that Plaintiff could not perform his past relevant work. AR 19. Nevertheless, the ALJ determined that Plaintiff had the RFC to perform other jobs that exist in significant numbers in the national economy. AR 19-20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) was unable to perform his past relevant work; yet (5) retained the RFC to perform other jobs that exist in significant numbers in the national economy. AR 13-20.

Here, Plaintiff argues the ALJ (1) failed to account for all medically determinable severe impairments impacting his ability to work, and (2) failed to properly consider his complaints of pain and dysfunction. (Doc. 11 at 8-13.)

# DISCUSSION

### A. *Plaintiff's Severe Impairments*

Plaintiff alleges the ALJ failed to account for all of his medically determinable severe impairments and their impact upon his ability to engage in basic work activity. He alleges this error requires reversal. (Doc. 11 at 8-10.) Defendant counters the ALJ properly identified Plaintiff's severe impairments, and the impact of the impairments, whether those impairments are severe or non-severe, in making his finding regarding RFC. (Doc. 17 at 7-11.)

A plaintiff bears the burden of proving that he or she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).

A person is disabled if his impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404.1520(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b).

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step two if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Social Security Ruling ("SSR") 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities.

SSR 96-3p. The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).

ALJ Hoffman considered the following at step two after making a determination that Plaintiff's diabetes and crepitus of the right patella were severe impairments:

> The claimant also has a status post right thumb reattachment with only slight residual manipulative limitations, *i.e.*, difficulty writing. The claimant told consultative examiner Dr. Nowlan he had limited motion in this thumb, but no pain. Dr. Nowlan imposed only slight manipulative limitations because of some difficulty with moving the thumb. Dr. Lauber noted the claimant was able to oppose his thumb and wrist, and range of motion was within normal limits without pain, incoordination, or fatigability even after 3 repetitive movements. The claimant's grip strength was reduced on his right hand, but Dr. Lauber could not determine if the claimant was applying full force or not, and there was tenderness to his right thumb, but he did not recoil in pain. The state agency [physician] opined the claimant's medical conditions were non-severe. In 2008, the Department of Veteran's Affairs found the claimant's right hand condition to be only 10% disabling.
> Because there is no evidence that the claimant's right thumb impairment causes more than minimal limitations in the claimant's ability to perform basic work activities, it is considered non-severe.

AR, internal citations omitted.

The Ninth Circuit has expressly held that an ALJ's failure to list an impairment at step two is harmless where the ALJ considers any limitations imposed by the impairment at step four. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding that any failure to list bursitis as severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four); *Burch*, 400 F.3d at 682, 684 (concluding that the ALJ did not commit reversible error in not considering the claimant's obesity at step two because the ALJ adequately considered the claimant's obesity in his residual functional capacity determination); *see also Baldwin v. Astrue*, No. ED CV 09-513-PJW, 2010 U.S. Dist. LEXIS 46175, at *5 (C.D. Cal. May 10, 2010) (stating that, even if "the ALJ erred at step two, any error was harmless because the ALJ accounted for the symptoms and limitations allegedly caused by her fibromyalgia in his residual functional capacity determination at step four"). Here, the Court need not make any decision as to whether the ALJ erred in his step two analysis because any such error was harmless. More specifically, any error was harmless because even if the ALJ did not consider Plaintiff's left knee and low back impairments to be severe for purposes of step two, he still considered the

functional limitations arising from these impairments at step four as part of his assessment of Plaintiff's RFC. *See* AR 16-19.

In contrast, at step four, further evaluation of the claimant's inability to work is made based on an analysis of the claimant's residual functional capacity and an assessment of other vocational factors. 20 C.F.R. § 404.1520(a). Accordingly, at the fourth step of the sequential evaluation process, a claimant's capacity to perform relevant work performed in the past is evaluated on the basis of a medical assessment of the claimant's residual functional capacity and a vocational assessment of the physical and mental demands of the work. 20 C.F.R. § 404.1520(e). A claimant who has the capacity to perform past relevant work will be found not disabled. *Id*.

When considering his RFC finding, ALJ Hoffman expressly referenced and discussed the medical record in this case. AR 16-19. More specifically, he noted the examination findings of Dr. Nowlan (AR 16), neurological assessment of Dr. Mehta (AR 17), orthopedic evaluation by Dr. Lewis (AR 18) and treatment by Dr. Lauber (AR 17). The ALJ considered the entire record in making his determination that Plaintiff is capable of performing light work. ALJ Hoffman's discussion regarding Plaintiff's knee and back include the following:

> On February 3, 2006, the claimant complained of morning knee stiffness and locking of his left knee for about 1 year which has recently gotten worse when he tried to exercise more. He described the pain as dull and constant during weight bearing, relieved by rest, and improved after morning ambulation and exercises. Examination revealed tenderness to palpitation and crepitus, but he had full range of motion without pain. He was diagnosed with arthritis of his left knee and given a knee brace. X-rays of his left knee showed no fracture or other abnormality.
> The claimant saw internal medicine consultative examiner Dr. Nowlan on July 1, 2006. The claimant was noted to have a very brisk walk; he walked down the hall and later across the parking lot quite rapidly. He used no assistive devices. Examination revealed crepitus of the right patella compatible with chondromalacia with some tenderness and pain, but range of motion was normal. Dr. Nowlan diagnosed diabetes and multiple pains. He opined the claimant could lift 40 pounds occasionally and 15 pounds frequently, stand and/or walk for 6 hours in an 8-hour work day, sit for unlimited hours, did not require an assistive device, and he had no postural limitations.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> In December of 2006, the claimant again reported locking of his left knee. Examination revealed normal posture and gait and there was no swelling in his joints. He was diagnosed with arthralgias.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> In February of 2007, the claimant complained of a painful left great toe. Examination was normal, including his gait, and x-rays revealed no fracture. He stated he was otherwise feeling well except for his arthritis; but he admitted he had not been taking his pain medication regularly. . . .
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> On April 30, 2007, the claimant underwent a compensation and pension neurological examination with Dr. Mehta. Examination revealed he was able to bend over and touch his toes without difficulty. His gait was normal; he walked with only minimal difficulties. Neurological and motor examination were also normal. Further examination and nerve conduction studies did reveal findings suggestive of polyneuropathy [in] his lower extremities.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> In August of 2007, the claimant complained of pain in his left foot during a routine visit; examination was unremarkable. . . .
> On November 17, 2007, the claimant was seen for an orthopedic evaluation of his left foot for service connection disability by Dr. Lewis. It was noted that claimant required the use of a cane and corrective shoes to help in ambulation (although Dr. Lauber, Dr. Nowlan, and Dr. Mehta did not feel a cane was needed, as discussed below). Examination revealed a bunion, callous formation, sensory loss consistent with diabetic peripheral neuropathy, and tenderness to the medial malleolous in his ankle with repetitive range of motion; however range of motion was full and did not produce pain and there was no ligamentous instability. The diagnosis was left foot injury, probably secondary to bunion deformity. . . .
> In February of 2008, . . . claimant reported that his left knee hurt when exercising, but he was taking minimal pain medications. He walked with a normal gait and examination of his knees revealed no deformity, edema, or tenderness. He was instructed to increase his pain medications for his arthralgias.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> In 2008, the Department of Veteran's Affairs found the claimant's knee condition to be only 10% disabling.
> The state agency doctors opined the claimant's physical impairments were non-severe.

AR 16-18, internal citations omitted.

Plaintiff's argument that the ALJ failed to account for all of his medically determinable severe impairments and their impact upon his ability to engage in basic work activity lacks merit. The ALJ considered all of Plaintiff's various complaints of pain at step four. *Lewis v. Astrue*, 498 f.3d at 911. The objective evidence is plain: any impairments to Plaintiff's low back and knees - right or left - amounts to only a slight abnormality. The ALJ made an informed judgment as is required.

With specific regard to the polyneuropathy[3] Plaintiff argues it is "certainly a medically determinable impairment that causes more than a minimal impact." (Doc. 11 at 9.) To support his position, Plaintiff cites to Dr. Mehta's report, which provides in pertinent part:

> [Neurological Examination] Motor System: Normal power and coordination in both upper and both lower extremities. On grip testing patient does not apply the pressure as much on right side as on the left side, so objectively speaking he does not really have weakness. There is no atrophy of any of the muscles in right hand, which is injured hand. No fasciculations, no involuntary movements, no tremors.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> RESULTS OF NEURODIAGNOSTIC STUDIES: Nerve conduction velocities were performed in both upper extremities and the following results were obtained.
>   1. Motor distal latency on right median nerve was prolonged to 5.60 ms and velocity was reduced to 49 meters per second and amplitude was reduced to 2 mV suggesting condition of neuropathy.
>   2. Motor distal latency in left median nerve was normal at 3.70 ms but velocity was reduced at 47 meters per second and amplitude was also reduced at 2 mV suggesting condition of neuropathy.
>   3. Motor distal latency in the right ulnar nerve was normal at 2.60 ms with velocity normal at 58 meters per second and amplitude normal at 6 mV suggesting normal findings.
>   4. Motor distal latency in the left ulnar nerve was normal at 2.45 ms with velocity normal at 55 meters per second and amplitude normal at 8 mV suggesting normal findings.
>   In conclusion, both ulnar nerve findings are normal. Both median nerve findings are abnormal, right side slightly worse than the left suggesting condition of neuropathy.
>   DIAGNOSIS:
>   1. Right median nerve neuropathy secondary to injury in 1976. The condition is stable and unchanged now with residual sensory diminution in right median nerve. No objective evidence of weakness detected.
>   2. Idiopathic polyneuropathy causing sensory reduction peripherally in all 4 extremities and reduced reflexes in all 4 extremities. Left median neuropathy is most probably caused by this condition of idiopathy polyneuropathy. There is also some worsening of polyneuropathy by recently detected diabetes mellitus type 2.

AR 674-675. Dr. Mehta's April 30, 2007, findings, however, are inconsistent with the other evidence. As the Commissioner points out, other examinations relating to Plaintiff's extremities resulted in normal findings: AR 394-395 [diabetic foot consult]; AR 488-491 [comprehensive internal medicine evaluation]; AR 730 [x-ray left foot]; *see also* AR 749, 756, 759, 767-68. The ALJ properly resolved the inconsistent medical evidence, as is his duty. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751, 755 (9th Cir. 1989).

---

[3] Polyneuropathy is defined as "a disease of nerves; especially : a noninflammatory degenerative disease of nerves usually caused by toxins (as of lead)." See http://www.merriam-webster.com/medical/polyneuropathy.

Thus, the ALJ's determination is supported by substantial evidence and based upon proper legal standards.

### B.     *Plaintiff's Complaints of Pain and Dysfunction*

Plaintiff contends the ALJ failed to account for his testimony "in a manner that dealt with the medically determinable impairments," including those identified as non-severe. (Doc. 11 at 11.) Plaintiff argues the ALJ failed to identify "a single reason much less one supported by substantial evidence for rejecting" his testimony. (Doc. 11 at 12.)

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal.2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Plaintiff had two severe impairments, i.e., diabetes and crepitus of the right patella compatible with chondromalacia. AR 15-16. When making his finding as to Plaintiff's RFC, the ALJ found that "*[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above . . . .*" AR 19, emphasis in original. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *Bunnell*, 947 F.2d at 345-346.

In this case, the ALJ found as follows:

> The claimant testified he attends classes on Mondays, Wednesdays, and Fridays from 8:00 a.m. to 12:00 p.m.; he has 4 classes and sits for 50 minutes per class. He said he uses a cane to attend school, but he did not use a cane at the hearing. Dr. Nowlan and Dr. Lauber indicated there was no need for a cane; Dr. Nowlan noted the claimant had a very brisk walk and Dr. Lauber noted he ambulated well and was able to turn, walk, and move about the room without assistance. Dr. Mehta also noted normal gait. Yet the claimant testified he cannot walk long distances without a cane, but with a cane, he can walk 3-4 blocks, stand 30 minutes, and sit for 2 ½-3 hours. Other than taking a daily shot for his diabetes, he does not mention any symptoms or complications related thereto. He also testified he was fired from his last job in 2005 for drinking. However, he denies drinking since approximately July of 2008, which is consistent with the medical records.
>
> In sum, the above residual functional capacity assessment is supported by the overall objective medical evidence of record. The claimant's allegations of

> disability are not entirely credible. His subjective complaints greatly outweigh the minimal objective findings discussed above. The medical records reflect that his overall physical condition actually improved, his diabetes was controlled with medications, and he was able to attend school and participate in VA activities, which is inconsistent with a finding of disability. The VA gave him only 10% disability for his knee, and the consultative examiner found him capable of light work. There is nothing to indicate the claimant cannot perform light work and his admitted activity level is certainly compatible with a light residual functional capacity.

AR 19, internal citations omitted.

The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony. The ALJ pointed to specific evidence in the record - including reports by Dr. Nowlan, the examining internist, and Dr. Lauber, the examining physician - in identifying what testimony was not credible and what evidence undermined Plaintiff's complaints. For example, the ALJ noted that, contrary to Plaintiff's claim of the need for a cane, both Drs. Nowlan and Lauber found no such need. Dr. Mehta noted a normal gait. The ALJ also commented upon the fact Plaintiff's condition has improved, his diabetes is now controlled, and he is able to attend school and participate in VA activities (including miniature golf [AR 726]). *See* AR 19.

Contrary to Plaintiff's claims of disability, the ALJ determined that Plaintiff's ability to attend four nearly one hour classes, three days a week, walk well with a normal gait, and participate in VA activities served as evidence of his ability to perform light work. If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). ALJ Hoffman clearly noted Plaintiff's daily activities contradicted his asserted limitations. The ALJ's findings are sufficiently specific.

Citing the conflict between Plaintiff's testimony of subjective complaints and the objective medical evidence in the record, the ALJ provided specific and substantial reasons that undermined Plaintiff's credibility. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Fair*, 885 F.2d at 603. Notably too, it is not the role of the Court to redetermine Plaintiff's credibility de novo.

Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

In sum, the ALJ's determination is supported by substantial evidence and based upon proper legal standards.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Paul W. Angevine.

IT IS SO ORDERED.

Dated:   **December 16, 2010**           **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE